**In re Ronald R. FOREMAN and Kathy A. Foreman, Debtors.**

**HOT SPRINGS V. A. FEDERAL CREDIT UNION, Plaintiff,**

**v.**

**Ronald R. FOREMAN and Kathy A. Foreman, Defendants.**

**Bankruptcy No. 580–00006.
Adv. No. 580–0006.**

United States Bankruptcy Court,
D. South Dakota.

Dec. 17, 1980.

Catherine G. Ortner, Ortner & Ortner, Hot Springs, S. D., for plaintiff.

Ramon A. Roubideaux, Rapid City, S. D., for defendants.

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

Ronald and Kathy Foreman, Debtors, filed a Chapter 7 Petition. The Hot

Springs V. A. Federal Credit Union, Plaintiff, filed a Complaint to determine the dischargeability of a debt. Plaintiff alleged that Ronald Foreman induced Plaintiff by a fraudulent misrepresentation to release its security interest in a title to a 1978 El Dorado Motor Home on the understanding that Plaintiff, in exchange, would receive a security interest and a title to a 1976 Itasca Motor Home. Plaintiff alleged that Debtor's actions fall within the provisions of 11 U.S.C. Section 523(a)(2), (4), and (6) and the debt should therefore be excepted from the discharge. Plaintiff requested the Court to order Debtors to deliver the 1978 El Dorado to Plaintiff; or to pay Plaintiff the sum of $6,566.73 plus 12 per cent interest from January 10, 1980; and for costs. Debtors filed an answer denying the allegations and remitting Plaintiff to its strict proof.

After the trial, counsel requested the opportunity to submit legal memorandums. Based on the pleadings, the evidence presented at the hearing, and the briefs, the Court makes the following findings of fact and conclusions of law.

## FACTS

On June 18, 1979, Debtors signed a promissory note for the sum of $7,500.00 and granted Plaintiff a security interest and lien on the title to a 1978 El Dorado motor home. On November 20, 1979, Ronald Foreman requested Plaintiff to release its security interest and lien on the 1978 El Dorado. Exhibit 1, which the Court received into evidence, is labeled "Request for Release of Security". It provides in part that,

"Share balance 29.01    Loan balance 6915.86
                              Account no. 2415–025

The undersigned, being indebted to the V. A. Hot Springs Federal Credit Union on a promissory note dated 6–18–79 in the original amount of 7500oo/oo secured by 1978 Chevrolet Eldorado Motor Home 22′ A/R $11,870oo/oo hereby requests release of the following security: same as above for the following reason Wants to trade titles for 1976 Itasca 25′ A/R 10,110oo/oo."

Exhibit 1 is dated November 20, 1979, and is signed by Ronald Foreman. Testimony at the hearing indicated that the reason given by Ronald Foreman for the swap was to allow a Nebraska banker handling the estate of Ronald Foreman's father to sell the 1978 El Dorado as part of that estate.

On November 21, 1979, after a Special Board Meeting recommended approval of Ronald Foreman's application, Plaintiff released its security interest and lien on the title of the 1978 El Dorado. Ronald Foreman never supplied Plaintiff with the title to the 1976 Itasca Motor Home so as to permit Plaintiff to note its lien on the title.

Exhibit 2, which the Court received into evidence, indicated that Ronald Foreman traded in a 1978 El Dorado motor home on the purchase of a 1980 Chevrolet Itasca motor home. This Court finds that the 1978 El Dorado traded in by Ronald Foreman was the same El Dorado Plaintiff had a security interest in.

Plaintiff alleged a balance due of $6,566.73 on the promissory note originally secured by the 1978 El Dorado.

## ISSUE

As to Debtor, Kathy Foreman, this Court dismisses the Complaint with prejudice. Plaintiff presented no evidence that Kathy Foreman took any part in or knew of the representations made by her husband Ronald Foreman, her Co-Defendant herein.

Counsel presented several arguments to the Court. The Court need only decide whether Ronald Foreman's unfulfilled representation that, in exchange for releasing Plaintiff's lien on the 1978 El Dorado, Plaintiff would receive a lien on a title to a 1976 Itasca motor home, is sufficient to create an exception to the discharge under 11 U.S.C. Section 523(a)(2)(A).

11 U.S.C. Section 523(a)(2)(A) provides that,

"(a) a discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—
(A) false pretenses, a false representation, or actual fraud other than a statement respecting the debtor's or an insider's financial condition;".

The frauds included in Section 523(a)(2)(A) are those which in fact involve moral turpitude or intentional wrong. The representations must have been knowingly and fraudulently made. The creditor must have relied upon the representations. A misrepresentation by a debtor of his future interest may constitute a false representation. 3 Collier on Bankruptcy 15th ed. (1980) Section 523.08(4).

Section 17(a)(2), the forerunner of Section 523(a)(2), was incorporated into Section 523 with very little substantive change. Existing case law construing Section 17(a)(2) is applicable in interpreting Section 523(a)(2)(A). *In re Miller*, 2 C.B.C.2d 849, 852, 5 B.R. 424 (Bkrtcy.W.D.La.1980).

In *Miller* the court adopted for application to Section 523(a)(2)(A) the test set out by the Ninth Circuit Court of Appeals in *In re Houtman*, 568 F.2d 651 (9th Cir. 1978), for determining when a debt was nondischargeable under Section 17(a)(2). The Court in *Miller* commented that,

"The five discernable elements of proof to be borne by the objecting party are as follows:

"(1) That the debtor made the representation.

"(2) That at the time he knew they were false.

"(3) That he made them with the intention and purpose of deceiving the creditor.

"(4) That the creditor relied on such representations.

"(5) That the creditor sustained the alleged loss and damage as the proximate result of the representation made." (852–853)

This Bankruptcy Court will follow the lead of *Miller* and apply the test set out by the Ninth Circuit in determining whether Plaintiff's debt should be excepted from the discharge under Section 523(a)(2)(A).

This Bankruptcy Court holds that Plaintiff has met the burden of proof required by the Ninth Circuit's test. The evidence clearly showed that Ronald Foreman represented to Plaintiff that Plaintiff would receive a lien on a 1976 Itasca motor home in exchange for releasing its lien on the 1978 El Dorado motor home. Ronald Foreman requested the release for the alleged reason of allowing the 1978 El Dorado to be sold as part of his father's estate in Nebraska. Plaintiff relied on Ronald Foreman's representation that Plaintiff would receive a lien on a 1976 Itasca motor home and released its lien. Ronald Foreman never supplied the title to the 1976 Itasca motor home. As a result Plaintiff has an unsecured claim that will be discharged unless this Court rules otherwise. After Plaintiff released its lien Ronald Foreman traded the 1978 El Dorado in on the purchase of a 1980 Itasca motor home.

This Court holds that when Ronald Foreman requested Plaintiff to release its lien, he had no intention of providing Plaintiff with a lien on the 1976 Itasca motor home. Further, this Court believes that Ronald Foreman never intended to deliver the 1978 El Dorado motor home to the executor of his father's estate. Ronald Foreman's actions, when considered together, clearly show that Debtor attempted and succeeded in deceiving Plaintiff into releasing its lien by fraudulently representing that, in exchange, Plaintiff would receive a lien on a title to a 1976 Itasca motor home.

## CONCLUSION

This Bankruptcy Court holds that the debt secured by the 1978 El Dorado motor home is excepted from the discharge. Judgment will be granted against Ronald Foreman for the sum of $6,566.73 plus 12 per cent interest from January 10, 1980. Plaintiff shall submit an Order consistent with the foregoing. This Memorandum Decision shall constitute Findings of Fact and Conclusions of Law.