## In re M. BLACKBURN MITCHELL INCORPORATED, dba Mitchell Development, Debtor.

## John W. RICHARDSON, Trustee in Bankruptcy, Plaintiff,

v.

## FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, Defendant.

**Bankruptcy No. 590–05037–ASW.
Adv. No. 92 5488.**

United States Bankruptcy Court,
N.D. California.

Feb. 14, 1994.

---

Christopher Alliotts (argued), Charles P. Maher, Michael A. Isaacs of Rosenblum, Parish & Isaacs, San Francisco, CA, for the trustee.

Scott D. Hughes (argued), Patricia M. Pechtel, Dennis V. Milner, Daphne Wells, FDIC Legal Div., San Jose, CA, for FDIC.

## *DECISION*

ARTHUR S. WEISSBRODT, Bankruptcy Judge.

This matter comes before the Court on cross-motions for summary judgment. The plaintiff is John W. Richardson, Chapter 7 Trustee ("Trustee") in the bankruptcy case of M. Blackburn Mitchell, Incorporated, dba Mitchell Development ("Debtor"). The defendant is the Federal Deposit Insurance Corporation ("FDIC"), which is sued in its corporate capacity.

The issue before the Court is whether the Trustee may recover a fraudulent transfer from the FDIC. Because the FDIC is acting in its corporate capacity, the parties agree that sovereign immunity is not an issue. The parties do not dispute the basic facts of the transaction that is the subject of this adversary proceeding.

For the reasons that will be discussed in this Decision, the FDIC's motion for summary judgment is denied. The Trustee's cross-motion for summary judgment is granted. The Trustee may recover Debtor's fraudulently transferred funds from the FDIC.

## I. *BACKGROUND*

Debtor was engaged in the development of real property. Martha Mitchell was the sole shareholder of the Debtor.

As a result of Ms. Mitchell's default on a personal loan from a bank whose assets were subsequently acquired by the FDIC, the FDIC obtained a judgment against Ms. Mitchell in the principal sum of $50,000 plus $18,175.35 in pre-judgment interest. The judgment also included post-judgment interest, attorney's fees and costs of suit. The FDIC recorded an abstract of judgment on June 26, 1990.

On August 13, 1990, Ms. Mitchell caused Debtor to issue a check from Debtor's bank account at First Interstate Bank ("Bank") made payable to the Bank in the sum of $77,741.48. Two references were written on Debtor's check to the Bank as follows: "FDIC—$77,736.48" and "Ca Ck—$5." On the same date it received Debtor's check, the Bank immediately issued a cashier's check payable to the FDIC in the amount of $77,-736.48. The FDIC subsequently issued an Acknowledgement of Satisfaction of Judgment to Ms. Mitchell.

A little over two months later, on October 23, 1990, Debtor filed a petition in bankruptcy under Chapter 11. The case was converted to a Chapter 7 proceeding in January 1991, and the Trustee was appointed.

On September 8, 1992, the Trustee filed this adversary pursuant to § 548 of the Bankruptcy Code [1] to avoid the $77,736.41 payment by Debtor to the FDIC as a fraudulent transfer. The FDIC does not contest the Trustee's claim that a fraudulent transfer of Debtor's funds took place. Rather, the FDIC challenges the Trustee's ability to recover from it.

## II. *PARTIES' POSITIONS*

The FDIC moves for summary judgment on the ground that it is a good faith transferee for value and as such, it is protected by the provisions of subsection (c) of § 548. The FDIC also argues that the Trustee may not recover fraudulently transferred funds from it pursuant to § 550 because it is not the initial transferee in the transaction. The FDIC contends that, instead, because she controlled what Debtor did with its funds, Ms. Mitchell is the initial transferee. The FDIC argues that consequently, it is a subsequent transferee and its liability is limited under § 550(b)(1).

In his cross motion for summary judgment the Trustee asserts that he has met all of the requirements for the Court to rule that the Trustee may avoid the transfer to the FDIC under § 548. With respect to the FDIC's arguments that the Trustee may not recover the transfer from it, the Trustee maintains

---

**1.** Unless otherwise specified, all statutory references are to the Bankruptcy Code, Title 11 of the

United States Code.

that any value the FDIC may have given was not for the benefit of the Debtor, but rather was for Ms. Mitchell's benefit, and thus the protection of § 548(c) does not apply. Furthermore, the Trustee claims that under the facts of this case, the FDIC *is* the *initial* transferee. Therefore, the safe harbor afforded to a subsequent transferee under § 550(b)(1) is not available to the FDIC.

## III. *DISCUSSION*

■ One of the basic principles of bankruptcy law is ensuring equal distribution of a debtor's property among its creditors holding valid claims. Accordingly, Congress has given the trustee (or debtor-in-possession pursuant to § 1107(a)) the power to avoid certain transactions or transfers that have diminished the estate and which undermine the policy of ratable distribution. These avoidance powers are set forth in various sections of the Bankruptcy Code.

Section 548,[2] the avoidance section which is applicable to the pending case, pertains to fraudulent transfers and obligations. It is similar in its provisions to the Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act. The main points of inquiry with respect to allegedly fraudulent transfers (where actual intent is not at issue) are: (1) whether the debtor received less than reasonably equivalent value in exchange for making the transfer of its proper-

ty, and (2) whether the debtor was insolvent or rendered insolvent because of the transfer.

In the pending case, the FDIC has presented no evidence to contradict the Trustee's proof that (1) the only value given for the transfer of $77,736.41 to the FDIC was the release of a judgment lien on Ms. Mitchell's property, and (2) because Debtor's funds were transferred to the FDIC, Debtor was left with an unreasonably small capital to carry on its business of developing real property. This Debtor received nothing of value in exchange and went into bankruptcy. Applying § 548(a) to the facts of this case, the Court concludes that the transfer of $77,736.41 to the FDIC is a fraudulent transfer that may be avoided by the Trustee.

### A. *Limitations on a Transferee's Liability*

#### 1. *§ 548(c)*

■ The Court finds that the FDIC gave nothing of value to *this* Debtor. Therefore, the Court concludes that the FDIC, as transferee, cannot invoke the protections of § 548(c)[3] that would otherwise apply where a fraudulent transfer is received in good faith and value was given *to a debtor* for it.

#### 2. *§ 550*

■ The FDIC also seeks protection un-

---

2. Section 548 states:
 (a) The trustee may avoid any transfer of an interest of the debtor in property, or an obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
 (1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
 (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
 (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
 (ii) was engaged in business or a transaction, or was about to engage in business or a

transaction, for which any property remaining with the debtor was an unreasonably small capital; or
 (iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.
 11 U.S.C. § 548(a).

3. Section 548(c) states:
 (c) Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee *gave value to the debtor* in exchange for such transfer or obligation.
 11 U.S.C. § 548(c) (emphasis added).

der the general provisions of § 550[4] of the Code that define the liability of a transferee where a transaction has been avoided under the trustee's avoidance powers. Section 550 limits the liability of a recipient of a transfer, including fraudulent transfers, in some circumstances, and is an equitable way of protecting certain innocent third parties who did not participate in, or have knowledge of the fraud.

The trustee may seek recovery from "the initial transferee of such transfer, *or* the entity for whose benefit such transfer was made." 11 U.S.C. § 550(a)(1) (emphasis added). In general, the trustee may recover either the transferred property, or its value, but not both—that is, the trustee may obtain only one recovery. 11 U.S.C. § 550(c).

The Code does not require that a recipient of a fraudulent transfer of debtor's property also be a creditor of the debtor to be liable for its return to the estate. 11 U.S.C. §§ 548, 550. Moreover, the Code makes knowledge or culpability on the part of the *initial* transferee irrelevant to whether the transferee will be liable for returning transferred property to the estate. The trustee may recover property from an innocent initial transferee. *See* 4 Collier on Bankruptcy ¶ 550.03 at 550–15 (15th ed. 1993).

However, the innocence of entities who take a debtor's property from the initial transferee, instead of receiving it from the debtor, may serve to protect those subsequent transferees from liability. The Code provides that the trustee may pursue recovery from successive transferees, but as soon as someone down the line takes for value, in good faith, and without knowledge of the voidability of the initial transfer, the trustee's ability to recover from that recipient is precluded. 11 U.S.C. §§ 550(b)(1) & (b)(2).

These fundamental concepts relative to avoidance and recovery of transfers of a debtor's property are routinely applied in bankruptcy cases every day. Problems arise, however, when in a given situation it may appear to be more equitable to protect a recipient of debtor's property from liability than to require that they return it to the estate for distribution to the debtor's creditors. In some of these situations, courts have applied the Code in such a way as to designate someone other than the entity that received the funds from the debtor, the "initial transferee."

This is what the FDIC is asking the Court to do in the pending case. For the reasons that will be discussed, the Court declines to manipulate the application of the Code in order to achieve what some may contend is a preferred result. First, however, the Court will explain why the Bank is not the "initial transferee."

### a. *The Bank*

■ In this adversary, neither party asserts that, as payee of the check drawn on Debtor's account, the Bank was the initial transferee of the funds.[5] A party who acts as a conduit and who merely facilitates the transfer from the debtor to a third party, is not an "initial transferee." *See Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 893 (7th Cir.1988) ("*Bonded*").

---

4. The subsections of section 550 that are applicable to the pending adversary include the following:

 (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

 (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

 (2) any immediate or mediate transferee of such initial transferee.

 (b) The trustee may not recover under section (a)(2) of this section from—

 (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt in good faith, and without knowledge of the voidability of the transfer avoided; or

 (2) any immediate or mediate good faith transferee of such transferee.

 (c) The trustee is entitled to only a single satisfaction under subsection (a) of this section.

11 U.S.C. § 550.

5. *See* Defendant's (FDIC) Reply to Plaintiff's Counter–Motion for Summary Judgment, filed February 3, 1993, at page 2, footnote 1.

■ The Ninth Circuit has adopted the test used by Judge Easterbrook writing for the majority in *Bonded* to determine whether a party is an initial transferee. *Danning v. Miller (In re Bullion Reserve of N. Am.),* 922 F.2d 544, 549 (9th Cir.1991) (*"Bullion Reserve "*). This test requires courts to examine whether the party receiving the funds exercised dominion or control over the money for its own account, that is, not merely as an agent for a third party. *Bullion Reserve,* 922 F.2d at 548–49. *See also Nordberg v. Societe Generale (In re Chase & Sanborn Corp.),* 848 F.2d 1196 (11th Cir.1988); *Lowry v. Sec. Pac. Business Credit, Inc. (In re Columbia Data Prods., Inc.),* 892 F.2d 26 (4th Cir.1989); *First Nat'l Bank of Barnesville v. Rafoth (In re Baker & Getty Fin. Servs., Inc.),* 974 F.2d 712 (6th Cir.1992); *Security First Nat'l Bank v. Brunson (In re Coutee),* 984 F.2d 138 (5th Cir.1993).

The evidence before the Court shows that the Bank's involvement in this transaction was to receive Debtor's funds from its account at the Bank and issue a cashier's check payable to the FDIC. The Bank received none of Debtor's funds for the Bank's own account. The only benefit that the Bank may have received was payment of a *de minimis* fee for handling the funds. Therefore, the Court concludes that the Bank is a financial intermediary in the transaction.[6] Under applicable case law, the Bank is not the initial transferee under § 550(a)(1).

This leaves either the FDIC, the entity that received Debtor's funds, or Ms. Mitchell, the person who caused the transfer to take place, as candidates for this designation. For obvious reasons, the FDIC asks the Court to rule that Ms. Mitchell is the initial transferee.

The issue of who is the initial transferee in this case is divisible into four sub-issues: (1) whether the FDIC meets the Ninth Circuit test for an initial transferee; (2) whether Ms. Mitchell meets that test; (3) whether a principal who directs and benefits from a fraudulent transfer of funds from a debtor to a third party is *ipso facto* the initial transferee within the meaning of § 550 even though the debtor's funds moved directly to the third party; and, if not, (4) whether merely by directing the debtor to use a cashier's check to effectuate the transfer, the principal becomes the initial transferee. The Court answers the first question in the affirmative and the remaining three in the negative.

b. *The FDIC*

■ The Bankruptcy Code does not define "transferee" or "initial transferee," [7] and there is no legislative history on the point. *See Bonded,* 838 F.2d at 893. However, the facts and the discussion in *Bonded* with respect to what makes the recipient of funds an initial transferee, are instructive on this question.

In *Bonded,* an individual named Michael Ryan controlled a number of currency exchanges and one of them, which subsequently became the debtor in that case, put $200,000 at Ryan's disposal. 838 F.2d at 893. The debtor sent its check to a bank from which Ryan had previously borrowed money to run one of his business enterprises, with specific directions to place those funds in Ryan's bank account. A short time later, Ryan used the funds to reduce his loan balance. The funds were *not* initially delivered to the bank to pay off Ryan's loan from the bank (in contrast with the situation here where the FDIC received Debtor's funds to pay off Ms. Mitchell's personal loan). The Seventh Circuit made it clear that the bank in *Bonded* was not the initial transferee, but only because the bank had not received the funds for its own account and could not do with them as it pleased. *Id.*

The court of appeals also stated in *Bonded* that the bank would have been the initial

---

**6.** The Court recognizes in this connection that the Bank changed the form of the funds and the name of the beneficiary, *i.e.,* from a check from the debtor made out to the Bank into a cashier's check made out to the FDIC.

**7.** The term "transfer," however, is included in the "Definitions" section of the Code with a broad definition: " '[T]ransfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security and foreclosure of the debtor's equity of redemption". 11 U.S.C. § 101(54).

transferee if it had received the debtor's funds for its own account to pay off the principal's loan from it (which is precisely what occurred with respect to the FDIC in the case before this Court). The court stated:

> If the note accompanying Bonded's check had said: "use this check to reduce Ryan's loan" instead of "deposit this check into [Ryan's] account", § 550(a)(1) would provide a ready answer. The Bank would be the "initial transferee" and Ryan would be the "entity for whose benefit [the] transfer was made." The trustee could recover the $200,000 from the Bank, Ryan, or both, subject to the rule of § 550(c) that there may be but one recovery.

838 F.2d at 892.

The Court has found in the pending case that Debtor's funds flowed directly from Debtor to the FDIC (through the intermediary Bank). The FDIC received the $77,741.48 for its own account and without any restriction on its use. The FDIC obtained full dominion and control over the funds with the right to put the money to its own purposes; it was not holding those funds in trust, or as agent, for any other party. *See Bonded*, 838 F.2d at 893. Therefore, applying the rationale of *Bonded* to the case *sub judice*, the FDIC is the "initial transferee," and Ms. Mitchell would be the entity "for whose benefit [the] transfer was made."

■ The Court concludes that it is irrelevant as a matter of law that the FDIC did not have knowledge, or reason to believe, that the funds it received flowed from Debtor's account. Under § 550 of the Bankruptcy Code, it is crystal clear that even the "innocent" initial transferee is liable for the fraudulently transferred funds. *See* 4 Collier on Bankruptcy ¶ 550.03 at 550–15 (15th ed. 1993). While policy arguments can be raised on both sides of the issue as to whether an innocent initial transferee *should* be liable for fraudulently transferred funds, the statute is unambiguous on this point.

Many of the FDIC's arguments in its briefs to this Court go to the alleged unfairness of requiring an innocent transferee to return fraudulently transferred funds. The FDIC argues in effect that the Court should not find the FDIC to be the initial transferee *because* it could not reasonably have known that something was amiss. However, the statute specifically envisions that innocent initial transferees will be liable for fraudulent transfers.

■ It is also legally irrelevant to the issue before the Court that Debtor did not owe money to the FDIC. The Bankruptcy Code does not require a debtor/creditor relationship between the debtor and its initial transferee in order to hold the transferee liable for a fraudulent transfer. The Court will not infer such a requirement.

The Court concludes that the FDIC is the initial transferee in the transaction *sub judice*.

#### c. *Ms. Mitchell*

■ As discussed *supra*, the court in *Bonded* held that receipt of funds from a debtor without the requisite dominion and control—that is, the right to put the money to one's own use—would not make a recipient such as the bank in that case (and the Bank in the pending case) an initial transferee. By comparison, the FDIC in the pending case did receive the funds from Debtor and did have the requisite dominion and control over them; thus, the Court has held that the FDIC is the initial transferee.

■ The facts pertaining to Ms. Mitchell's role in the transaction present considerably different considerations for the Court than those supporting the Court's ruling with respect to the FDIC. Application of the *Bonded* definition of initial transferee to Ms. Mitchell raises the issue of whether a principal's dominion and control over the actions of a debtor in causing a transfer of funds to occur, where there is *no* receipt of funds by the principal, nonetheless renders the principal an initial transferee for purposes of the Bankruptcy Code. For the reasons that will be discussed, this Court holds that receipt of a debtor's property is an essential element in the definition of "initial transferee." Without receipt and the right to put the property to

his or her own use, a principal is not liable as an initial transferee under § 550(a)(1).[8]

 The Court believes that the proper focus when analyzing who is a transferee, is on the *flow of funds*. In order to be an initial transferee, one must be a transferee in the ordinary sense of the word. A transfer that may be avoided under applicable sections of the Bankruptcy Code takes place from the debtor *to* some entity. Thus, receipt of the transferred property is a necessary element for that entity to be a transferee under § 550. Simply directing a transfer, *i.e.*, such as by directing a debtor to transfer its funds, is not enough.

When the court in *Bonded* defined the word "transferee," it emphasized dominion and control over the transferred funds with the right to put them to one's own purposes. In *Bonded,* Ryan had dominion and control over the funds once they were placed into his bank account. The court surmised that once the funds were in his account, "Ryan was free to invest the whole [sum] in lottery tickets or uranium stocks." It was "Ryan's money." 838 F.2d at 894.

The facts of the pending case are in sharp contrast. Although Ms. Mitchell may have controlled the transactions that Debtor made (as Ryan certainly did in *Bonded* ), once the funds left Debtor's account, Ms. Mitchell never had personal possession of them with the freedom to buy lottery tickets or uranium stocks or anything else. Rather, Debtor's check to the Bank carried notations indicating that it was for the purchase of a cashier's check payable to the FDIC. The cashier's check issued by the Bank was, in fact, payable to the FDIC. Debtor's funds, as such, were never obtained by Ms. Mitchell herself and she never had the requisite dominion or control over those transferred funds to spend them for whatever she pleased.

 This Court does not disagree that in order to be a transferee one must obtain dominion and control over funds. But that does not mean that merely because one has dominion and control of funds (as principals of companies ordinarily do) that one is

also a transferee. Rather, in order for there to be a *transfer* of the debtor's funds, the debtor must dispose of or part with them, that is, such funds must actually leave the debtor. In order to be a *transferee* of the debtor's funds, one must (1) actually receive the funds, *and* (2) have full dominion and control over them for one's own account, as opposed to receiving them in trust or as agent for someone else.

Some courts have held under similar circumstances that the mere fact the principal controlled the debtor's actions can, in and of itself, be a sufficient basis for rendering the principal an initial transferee. *See, e.g., Ross v. United States (In re Auto–Pak, Inc.),* 73 B.R. 52 (D.D.C.1987) (*"Auto–Pak* "); *Robinson v. Home Savs. of Am. (In re Concord Senior Hous. Foundation),* 94 B.R. 180 (Bankr.C.D.Cal.1988) (*"Concord Senior Housing* "); *Still v. American Nat'l Bank & Trust Co. (In re Jorges Carpet Mills, Inc.),* 50 B.R. 84 (Bankr.E.D.Tenn.1985) (*"Jorges Carpet* "). The FDIC relies on both *Auto–Pak* and *Concord Senior Housing* and urges this Court to rule that Ms. Mitchell is the initial transferee in the pending case because of her control over Debtor's transfer of $77,-741.48 to it.

In *Auto–Pak,* a debtor's president caused a check to be issued prepetition from the debtor's account. This check was payable to the IRS. The president then took the check to the bank where it was transformed into a cashier's check payable to the IRS. The president used the cashier's check to pay the tax obligations owed to the IRS, not by the debtor, but by a *second* corporation that the president owned. 73 B.R. at 53.

The United States District Court for the District of Columbia (Sporkin, J.), reversed the decision of the bankruptcy court that had held the transfer could be recovered from the IRS by the bankruptcy trustee. The district court determined that because the president had the check that was payable to the IRS issued to him directly, and then delivered it to the bank where it was transformed into a cashier's check on which he wrote a refer-

---

**8.** However, the principal may in certain circumstances be liable as "the entity for whose benefit such transfer was made." 11 U.S.C. § 550(a)(1). *See* discussion in text, *infra* at 130.

ence to his second corporation, the president essentially took control of the debtor's funds and thereby became the initial transferee. 73 B.R. at 54. The district court opined that if the check had been "sent directly to the [IRS]" from Auto–Pak, the trustee might have had a sound argument.[9] *Id.*

In the view of the district court, the president's actions rendered him an initial transferee and insulated the IRS, as an intermediate or mediate transferee, from liability under § 550(b).[10] 73 B.R. at 54. The district court emphasized that the use of a cashier's check by the debtor's president deprived the IRS of knowledge that there was a fraudulent transfer, *i.e.*, that the funds originated with the debtor.[11] *Id.*

The FDIC also cites to *Concord Senior Housing*, in which the manager of a housing complex that had filed bankruptcy pledged assets in the debtor's certificate of deposit account postpetition to secure the manager's personal loans obtained from a savings bank. The bankruptcy court cited to the district court's decision in *Auto–Pak*, and found that in misappropriating the debtor's funds for his own use, the manager caused a postpetition fraudulent transfer to occur.[12] The court determined that the manager's actions rendered *him* the initial transferee and thus, the savings bank was insulated from liability when it subsequently foreclosed on the collateral. 94 B.R. at 183.

This Court finds the analysis used by the courts in the two cases cited by the FDIC to be unpersuasive and in conflict with the ordinary definition of transferee. For example, in *Concord Senior Housing*, the debtor's funds never even left its certificate of deposit account until the bank seized them to satisfy the principal's debt. Nevertheless, the court held that the debtor's principal became a "transferee" merely by identifying the account as security for the principal's personal loan. This ruling enabled the foreclosing bank to assert the protections afforded under § 550(b) to a subsequent transferee. In *Auto–Pak*, the district court framed the issue exactly that way, *i.e.*, whether the IRS would be "protected under § 550(b)." 73 B.R. at 54.

█ The Court concludes that the mere fact that a debtor's fraudulent transfer was directed by a principal of the debtor does not *ipso facto* transmute that principal into being the "initial transferee" within the meaning of § 550. Reaching the contrary conclusion in order to protect an "innocent" recipient of the transferred funds, is contrary to policy considerations underlying the Bankruptcy Code.

A non-individual debtor such as a corporation or partnership almost always effects a fraudulent transfer through the actions of its principals, or through the principals of its parent corporation, or other similar entity.[13]

9. Judge Sporkin did not elaborate on his reasoning for this latter conclusion. The Court does not disagree with it, but is concerned about the many such distinctions that a court might be called upon to make if the premise is accepted that a non-recipient can be an initial transferee.

10. In a footnote to the decision, the district court remarked that because it had determined that the IRS was insulated from liability due to a mediate transfer, it did not reach the question of whether the IRS was protected by sovereign immunity from having to return the money paid to it on behalf of the president's second corporation.

11. *See* discussion in text, *infra* at 130–31.

12. The Court questions this conclusion based on the Code's definition of transfer: *"disposing of or parting with* property." 11 U.S.C. § 101(54) (emphasis added).

13. The court in *Bonded* recognized this point in the following discussion:

Section 550(a)(1) recognizes that debtors often pay money to A for the benefit of B; that B may indeed have arranged for the payment (likely so if B is an insider of the payor); that but for the payment B may have had to make good on the guarantee or pay off his own debt; and accordingly that B should be treated the same way initial recipients are treated. If B gave value to the bankrupt for the benefit, B will receive credit in the bankruptcy, *see* 11 U.S.C. § 547(c)(1)(A), § 548(c), and if not, B should be subject to recovery to the same extent as A—sometimes ahead of A, although § 550 does not make this distinction.
*Bonded*, 838 F.2d at 896.
In the case *sub judice*, the Debtor paid the FDIC ("A" in the example above) money for the benefit of Ms. Mitchell ("B" in the example); Ms. Mitchell arranged for the payment; and but for the payment she would have had to pay off her own debt to the FDIC. The fact that she arranged for the payment to the FDIC (which is typical of such situations) does not mean that she

Under the conclusion reached by the courts in *Auto–Pak* and *Concord Senior Housing* that the bad actor who misdirects a debtor's funds should be deemed to be the initial transferee, a bankruptcy estate will nearly always be precluded from recovering the fraudulently transferred funds, unless the subsequent transferee took the money *with* knowledge of the fraud.[14]

■ Turning every unscrupulous principal into the initial transferee does extreme disservice to § 550, and twists the word "transferee" beyond recognition. It violates the statutory language and purpose and severely and unfairly limits the ability of a trustee to recover misappropriated estate property so as to effect a *pro rata* distribution among a debtor's creditors who have been defrauded. It would, as a practical matter, operate to block trustees from being able to recover funds fraudulently transferred from debtors' estates in numerous bankruptcy cases.

■ Rendering the principal an initial transferee to insulate the entity that actually received the money, also gives too much power to an unscrupulous insider to effect a fraudulent transfer (*e.g.*, to satisfy a personal obligation as was the case here) without allowing a trustee to have the means for avoiding the transfer for the benefit of the debtor's creditors. Any exceptions to the basic rule that estate property is to be divided *pro rata* among its creditors should be narrowly construed.

■ This Court concludes that the words "initial transferee" should not be read to include a debtor's principal or other insider merely because the principal or insider caused that debtor's funds to be fraudulently transferred. Asking the court to disregard distinctions between a recipient of funds and the principal who causes their transfer so that the recipient can be protected, places the court in the position of having to decide when and under what circumstances it will apply the "transferee" label to the principal. This result is undesirable for it destroys any bright line application of the law and can lead to inconsistent outcomes.

This Court understands the wish to protect certain "innocent" transferees. However, Congress made the decision to render them liable and the Court is troubled by decisions that strain otherwise ordinary definitions of terms contained in the Code in order to accomplish particular results.

Several circuit courts, including the Ninth Circuit Court of Appeals, have cited to the decisions in *Auto–Pak* and/or *Concord Senior Housing* when discussing the importance of dominion and control as an element in the definition of "transferee."[15] However, none of these circuit courts ruled on the question this Court must resolve, that is, whether a non-recipient of funds who controls their transfer can, or even should, appropriately be determined to be a transferee within the meaning of the Code. Thus, the references to a principal's control contained in the circuit court opinions are inapplicable to the case at bench or are dicta.

The Sixth Circuit majority opinion in *IRS v. Nordic Village, Inc. (In re Nordic Village, Inc.)*, 915 F.2d 1049, 1055 n. 3 (6th Cir.1990), *rev'd*, ⸺ U.S. ⸺, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) (*"Nordic Village"*), might have decided this question, but did not. There, an officer and shareholder drew a $26,000 counter check on the corporate account made payable to the bank. The bank,

---

becomes the initial transferee and the FDIC becomes a subsequent transferee. Ms. Mitchell is, however, the entity for whose benefit the transfer was made and is liable for return of the funds on that independent basis under § 550(a)(1).

**14.** From a policy standpoint, the legislative choice was not easy—either to insulate fraudulent transfers from recovery because they are virtually always directed by an insider who can be found to have illegally taken dominion over the funds (often using a cashier's check or similar anonymous negotiable instrument to effect

the transfer), or to place some risk on those who receive such instruments which will lessen confidence in them in the marketplace. But the language of § 550 reflects a clear legislative decision to render even innocent initial transferees liable for fraudulent transfers.

**15.** *See, e.g., Bullion Reserve*, 922 F.2d at 549 n. 3; *IRS v. Nordic Village, Inc. (In re Nordic Village, Inc.)*, 915 F.2d 1049, 1055 n. 3 (6th Cir.1990), *rev'd*, ⸺ U.S. ⸺, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *Bonded*, 838 F.2d at 893.

in turn, issued several cashier's checks, one of which was payable to the IRS and bore the notation that the remitter was the debtor corporation. When the check was delivered to the IRS; the principal instructed the IRS to credit the principal's outstanding tax liabilities incurred in another of his business enterprises, which it did. At some point the remitter information had a line drawn through it, but the majority determined that the information on the check was sufficient to put the IRS on notice of the possibility that something was wrong. Thus, the court concluded that the IRS would be liable *either* as the initial transferee *or* as a subsequent transferee since it could not meet the requirements of value, good faith and lack of knowledge under the circumstances. 915 F.2d at 1056. The decision was subsequently reversed by the Supreme Court on sovereign immunity grounds.

Circuit Judge Kennedy dissented in *Nordic Village* on the basis of sovereign immunity and remarked that the majority had reached no conclusion as to whether the IRS in that case was an initial or subsequent transferee. Because she also disagreed with the majority's conclusion that the IRS acted in bad faith and with knowledge of the transaction's voidability, Judge Kennedy addressed the initial transferee issue. 915 F.2d at 1061–62.

Judge Kennedy stated her belief that the Seventh Circuit's decision in *Bonded* should be read to include as an initial transferee a person who has both the intent and the ability to put the money to his own uses, even if the "right" to do so was, in a legal sense, lacking. 915 F.2d at 1062. Thus, if when the principal in *Nordic Village* cashed the counter check drawn on the corporate account, the principal also had the ability to control to whom the bank issued its cashier's check, then in Judge Kennedy's opinion, this would give the principal initial transferee status.[16] If, however, the bank allowed the principal to cash the counter check only because the proceeds were to be used to purchase a cashier's check payable to the IRS, then this limited control would not permit the

principal to be a transferee. 915 F.2d at 1063.

Judge Kennedy's analysis was made without regard to the control the principal exercised in causing the debtor to issue the counter check. In her dissent she concluded that if the principal caused the debtor to write a check directly to any particular entity, then that entity (not the principal) would be the initial transferee, and the principal would be the entity for whose benefit the transfer was intended. 915 F.2d at 1063 n. 8.

The discussion in the dissent in *Nordic Village* is not inconsistent with this Court's position that the focus should be on the flow of funds, and that receipt of the debtor's property is a necessary element for qualifying one as a transferee. Whether or not Judge Kennedy's test is a correct application of the law, it seems clear that she would reach the same result as this Court if faced with the facts as presented in the case at bench. Applying Judge Kennedy's test, there is no doubt that Ms. Mitchell did not have the requisite control over the disposition of the funds from the debtor's check to render her the initial transferee. From the moment Debtor's funds left its account, they were earmarked for the FDIC. The FDIC was the initial transferee.

In *Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.)*, 904 F.2d 588, 597 n. 22 (11th Cir.1990) ("*Chase & Sanborn* "), the Eleventh Circuit Court of Appeals directly ruled on the issue of whether a principal's control in causing a transfer to occur makes that principal an initial transferee, but it did so without discussing *Auto–Pak* or similar cases. The lower courts in *Chase & Sanborn* had concluded that Chase & Sanborn's principal, and not the bank, was the initial transferee because of his control over the debtor's actions in transferring payments to the bank with instructions to apply them to loans the principal had guaranteed. On appeal, the circuit court found this to be a misapplication of the control test. The court held that the focus should be on the degree of control exercised by the *transferee,* and not the *transferor.* The court stated, "the extent of

---

**16.** At this point in her dissent, Judge Kennedy cited to *Auto–Pak* and *Jorges Carpet,* but this Court is not convinced that the facts of those cases support her position.

[the principal's] control over Chase & Sanborn generally, and over Chase & Sanborn's actions in transferring the disputed funds to [the bank] in particular, is *entirely irrelevant* to the 'initial transferee' issue." 904 at 598 (emphasis added). This Court agrees.

■ Directing a debtor to use funds for one's own personal benefit, or for a friend or relative's benefit (*whether or not one also* receives a benefit from that transaction), does not make one a transferee. Using benefit to the principal as a consideration for applying the initial transferee label to the principal in order to protect an innocent recipient, is a misapplication of the Code. The bottom line is that the court does not normally reach the question of whether a principal benefitted unless it is deciding whether the principal is the entity for whose benefit the transfer was made and is liable on that ground.[17]

■ The court in *Bonded* recognized this when it distinguished "transferees" from "entities that get a benefit because *someone else received* the money or property". 838 F.2d at 896 (emphasis added). The court concluded that for purposes of analyzing § 550, these two categories are mutually exclusive.[18] 838 F.2d at 896. *See also Chase & Sanborn,* 904 F.2d at 597 n. 22; *Weiboldt Stores, Inc. v. Schottenstein,* 131 B.R. 655, 666 n. 16 (N.D.Ill.1991); *Haley v. Sorani (In re Richmond Produce Co., Inc.),* 118 B.R. 753, 757–58 (Bankr.N.D.Cal.1990); *Laird v. Bartz (In*

*re Newman Cos., Inc.),* 140 B.R. 495, 498 (Bankr.E.D.Wis.1992). Under § 550(a)(1), *both* entities are liable.[19]

■ There is no question that Ms. Mitchell caused Debtor to transfer its funds in order to pay Ms. Mitchell's debt to the FDIC. As a result, she is "the entity for whose benefit such transfer was made." As the benefitted entity, Ms. Mitchell may not also be a transferee. However, as the benefitted entity, Ms. Mitchell is liable for the transfer on that basis under § 550(a)(1).

The Court concludes that Ms. Mitchell is not the initial transferee in this case. Debtor's transfer was not made to Ms. Mitchell. Rather, the funds flowed from Debtor's account directly to the FDIC. The FDIC had full use of those funds for its own account. In this case, the FDIC, and not Ms. Mitchell, is the initial transferee for purposes of liability under § 550(a)(1).

### 4. Use of Cashier's Check

■ The mere fact that Ms. Mitchell used a cashier's check—a normal and customary business device—should not change the result here that Ms. Mitchell is not the initial transferee. The use of a cashier's check as a financial conduit, intermediary or mechanism for forwarding funds, is common practice in business transactions. Indeed, companies, particularly those experiencing financial problems, frequently are compelled

---

**17.** The question of whether a transfer benefitted an entity that received it may be relevant in the context of deciding if the entity is a mere custodian, agent or conduit for another. *See, e.g., Armstrong v. Ketterling (In re Anchorage Marina, Inc.),* 93 B.R. 686, 694 (Bankr.D.N.D.1988).

**18.** In its post argument brief, the FDIC contends that the *Bonded* court *only* stated that a *subsequent* transferee could not be the "entity for whose benefit" the transfer was made. This Court disagrees with the FDIC's limited interpretation of that case. The following excerpts should clarify that issue:

> [A] subsequent transferee cannot be the "entity for whose benefit" the initial transfer was made. The structure of the statute separates initial transferees and beneficiaries, on the one hand, from "immediate or mediate transferee[s]", on the other. The implication is that the "entity for whose benefit" is different from a transferee, "immediate" or otherwise.

838 F.2d at 895.

> The legislative history of § 550(a) might show that a transferee also could be an "entity for whose benefit"—but it does not. . . . We are left with the inference from structure: § 550 distinguishes transferees (those who receive the money or other property) from entities that get a benefit because someone else received the money or property.

838 F.2d at 896.

> To say that the categories "transferee" and "entity for whose benefit such transfer was made" are mutually exclusive does not necessarily make it easy to determine in which category a given entity falls.

*Id.*

**19.** The Trustee had the option in this case of seeking return of the money from the initial transferee (the FDIC) or its value from the entity for whose benefit the transfer was made (Ms. Mitchell).

to use cashier's checks to pay obligations. Just as the Bank did not become the initial transferee in this case simply because Ms. Mitchell used one of the Bank's cashier's checks to transfer funds to the FDIC, Ms. Mitchell herself did not become the initial transferee merely by choosing a cashier's check as the mechanism for transferring Debtor's funds.

The Court recognizes that Ms. Mitchell directed the use of Debtor's funds for her own personal benefit. This, of course, would have been so even if she had caused Debtor to issue a check to the FDIC to satisfy her personal debt. The Court also recognizes that the initial transferee (here, the FDIC) would bear a risk of a fraudulent conveyance even though Ms. Mitchell's use of a cashier's check rendered it unlikely that the FDIC would be an effective monitor of Ms. Mitchell's fraud. But, on the other hand, the FDIC received Debtor's funds directly for its own account and not as a financial intermediary or as anyone's agent. *See Bonded,* 838 F.2d at 892–93.

While Ms. Mitchell directed the fraud, she only transferred Debtor's funds through a normal financial conduit to the FDIC.[20] Ms. Mitchell directed the disposition of Debtor's funds and used those funds fraudulently for her own personal benefit. Whether she caused Debtor to issue the check on its own account or caused Debtor to use a cashier's check should not change the result here.

While it is correct that the FDIC might have been more likely to discover the fraud if the check had been drawn on Debtor's bank account, the Court is not convinced that that fact alone should transmute an initial transferee into a subsequent transferee. Indeed, the language of § 550 is clear that the totally innocent *initial* transferee is nevertheless liable for a fraudulent transfer. Therefore, Congress must have realized that there would be situations in which trustees would recover from innocent initial transferees.

In sum, the statutory scheme renders the initial transferee liable, whether or not the transferee had knowledge of the fraud. It does disservice to this statutory scheme and eviscerates the fraudulent transfer law to strain in every case to find the principal to be the initial transferee so as to protect a so-called "innocent" recipient of the debtor's funds.

### B. *Equitable Considerations*

■ The result in the instant case is, in this Court's view, fair. Ms. Mitchell caused Debtor's funds to be transferred to the FDIC. Ms. Mitchell fraudulently transferred Debtor's funds for her personal use regardless of whether the Debtor used a cashier's check. Although, the FDIC is an innocent transferee, Debtor's creditors are also innocent. Debtor did not owe the FDIC any money. Therefore, with the avoidance of the transfer, the parties are placed in the same position they occupied before the fraudulent transfer—*i.e.,* Ms. Mitchell remains liable to the FDIC for satisfaction of its judgment, and Debtor (who was a stranger to the FDIC) is made whole with respect to its principal's fraudulent transfer of Debtor's funds. The Court also notes that the FDIC, which is worse off because it gave up its security, is not necessarily without recourse in cases such as the one at bench. Presumably, the FDIC has a cause of action against Ms. Mitchell.[21]

Any argument that the Court should exercise its equitable powers to avoid the other-

---

**20.** Ms. Mitchell arguably might have become the initial transferee if she had transferred the funds from the Debtor to become co-mingled in her own personal account, and then subsequently transferred funds from her personal account to the FDIC. But that is not the case here and the Court does not reach that issue.

**21.** Although Ms. Mitchell has filed for bankruptcy and recovery against her *estate* may not be possible, the FDIC may have a claim against Ms. Mitchell that would be nondischargeable under 11 U.S.C. § 523. *See, e.g., In re Cheek,* 17 B.R.

875 (Bankr.M.D.Ga.1982) (use of false affidavit to obtain release of lien creates a nondischargeable debt under §§ 523(a)(2) and (a)(6)); *In re Foreman,* 7 B.R. 776 (Bankr.D.S.D.1980) (fraudulent release of lien creates exception to discharge under § 523(a)(2)); *In re Hogan,* 38 B.R. 922 (Bankr.E.D.Mo.1984) (§ 523(a)(2) claim for breach of warranty of clear title); *In re Riso,* 978 F.2d 1151 (9th Cir.1992), and *In re Posta,* 866 F.2d 364 (10th Cir.1989) (conversion of security interest is willful and malicious under § 523(a)(6)).

**132**

wise straight forward application of the Bankruptcy Code to render the FDIC liable as the initial transferee of Debtor's funds, is negated by the Ninth Circuit Court of Appeals' decision in *Official Unsecured Creditors Comm. of Sufolla, Inc. v. U.S. Nat'l Bank of Oregon (In re Sufolla, Inc.)*, 2 F.3d 977 (9th Cir.1993) ("*Sufolla*"). In allowing recovery of a preference under the application of the rule enunciated in *Levit v. Ingersoll Rand Fin. Corp. (In re V.N. Deprizio Constr.)*, 874 F.2d 1186 (7th Cir.1989), the Ninth Circuit applied a literal reading of the Code. The court commented that because it took the statutory approach, it did not need to rule on whether the "equitable approach" may be used to circumvent the plain meaning of the Code. 874 F.2d at 1198. Nevertheless, the court cited to and quoted from the many courts of appeal decisions that have rejected such a tactic. *Sufolla*, 2 F.3d at 980–81. *See also Bonded*, 838 F.2d at 894–95 (critical of using equitable powers to deny recovery against initial transferee within the statute).

## IV. *CONCLUSION*

The foregoing constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure. The Trustee may avoid the transfer so that the funds can be returned for distribution to the creditors of Debtor's estate. The FDIC's motion for summary judgment is denied; the Trustee's cross-motion is granted. Counsel for the Trustee shall submit a proposed order and judgment consistent with the Court's Decision.