In re LUCAS DALLAS, INC., Debtor.

GENERAL ELECTRIC CAPITAL AUTO LEASE, INC., and GE Capital Mortgage Services, Inc., Appellants, Cross–Appellees,

v.

William H. BROACH, Trustee, Appellee, Cross–Appellant.

BAP Nos. NC–94–2055–HVR, NC–94–2116–HVR.
Bankruptcy No. 91–46079 IN.
Adv. No. 93–4562 AN.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted May 18, 1995.

Decided Aug. 17, 1995.

M. Michael Morgan, San Diego, CA, for appellants, cross-appellees.

Valerie L. Smith, San Francisco, CA, for appellee, cross-appellant.

Before HAGAN, VOLINN and RUSSELL, Bankruptcy Judges.

### *OPINION*

HAGAN, Bankruptcy Judge:

William H. Broach ("trustee") is the chapter 7 trustee for Lucas Dallas, Inc. ("debtor"). The trustee filed an adversary proceeding to recover numerous alleged fraudulent transfers by the debtor to GE Capital Mortgage Services, Inc. ("GE Mortgage"), and General Electric Auto Lease, Inc. ("GE Auto"), among others. (Collectively, GE Mortgage and GE Auto shall be referred to as the "GE defendants.") The trustee and the GE defendants filed cross-motions for summary judgment. The bankruptcy court granted the trustee's motion for summary judgment on the state law fraudulent transfer claims. The court granted the GE defendants' motion for summary judgment on the federal fraudulent transfer claims, however, finding those claims barred by the statute of limitations. Both the trustee and the GE defendants appeal. We AFFIRM the bankruptcy court's judgment but REMAND for corrections to conform with this opinion.

### FACTS

William Dallas ("Dallas") was a principal of the debtor, and Mansveto Lenci ("Lenci") an employee of the debtor. Dallas obtained a loan from Monarch Mortgage Corporation secured by a mortgage against his personal residence. Monarch Mortgage Corporation transferred the mortgage to Travelers Mortgage Service, Inc. ("Travelers"). GE Mortgage subsequently purchased Travelers and used its name for a time. From February,

1990 until January, 1991, the debtor paid GE Mortgage $41,811.59 against this debt.

Both Dallas and Lenci leased cars from GE Auto. Dallas and Lenci were billed directly for the lease payments. The debtor paid $31,716.01 to GE Auto on the leases. These payments occurred between June, 1989 and May, 1991.

The debtor did not have any direct obligation to the GE defendants, nor is there any evidence that the debtor was required to make these payments as part of the compensation paid to Dallas or Lenci. The trustee presented evidence that the debtor was insolvent at the time all of these payments were made.

In September, 1991, an involuntary petition was filed against the debtor. On November 7, 1991, the bankruptcy court entered an order for relief under chapter 7. On that date, the trustee was appointed as interim trustee under section[1] 701. The section 341 creditors' meeting was not held until October 12, 1994.[2]

On November 5, 1993, the trustee filed an adversary proceeding against Travelers and Dallas, alleging actions to recover preferential transfers, fraudulent transfers, and for an accounting. This adversary proceeding was assigned the number 93 4562 AN.[3] The trustee alleged, *inter alia*, that the debtor made seven payments totalling $24,297.88 to Travelers during the four years prior to the date the involuntary bankruptcy petition was filed. These transfers were alleged to be avoidable under section 548, and section 544 and Cal.Civ.Code § 3439 *et seq.* ("California Uniform Fraudulent Transfer Act"). The complaint was served on November 17, 1993 on Travelers, GE Mortgage, and GE Mortgage's registered agent for service of pro-

cess. Travelers did not answer the complaint.

On March 9, 1994, the trustee filed an amended complaint. The amended complaint listed as defendants Travelers, Dallas, GE Mortgage, GE Auto, and others. The amended complaint specifically alleged transfers to GE Mortgage and/or Travelers in the amount of $41,811.59, and transfers to GE Auto in the amount of $35,887.88. As with the initial complaint, the trustee sought recovery under, *inter alia*, sections 544 and Cal.Civ.Code § 3439 *et seq.*, and section 548.

The trustee and the GE defendants filed cross-motions for summary judgment. The GE defendants alleged the federal causes of action were barred by section 546(a)(1)'s two-year statute of limitations, and that the transfers were not fraudulent under California law. The trustee contended the statute of limitations had not run on the federal causes of action, and presented evidence to support its contention the GE defendants had received fraudulent transfers.

The bankruptcy court concluded that the trustee had been appointed on November 7, 1991, the date of the order for relief and the date the trustee was appointed as interim trustee, and that the two-year period began to run from that date. The court found the federal causes of action were time-barred under section 546, having been brought more than two years later. Accordingly, the court granted the GE defendants' motion for summary judgment as to the federal claims.

The bankruptcy court granted summary judgment for the trustee on the California fraudulent transfer claims. All transfers were avoided in the full amount.

The GE defendants appeal the summary judgment against them on the California

---

1. Unless otherwise noted, all references to "section" are to the respective section of Title 11, United States Code.

2. The bankruptcy court's docket indicates the section 341 meeting was scheduled for October 12, 1994. There is nothing in the docket to indicate whether the meeting was actually held on that date.

3. The bankruptcy court's docket states this complaint was filed on November 8, 1993, and en-

tered on the docket on the same date. There are two copies of the complaint in the record on appeal. The first is located as Exhibit A to the "Request for Judicial Notice Under Rule 201 of the Federal Rules of Evidence," GE Defendants' Excerpts of Record. The date stamp is illegible on this copy. The trustee's excerpts contain a copy of the first four pages of the complaint. The date stamp on this copy shows the complaint was filed on November 5, 1993, at 3:11 pm. It therefore appears the docket entry is mistaken.

fraudulent transfer claims. The trustee cross-appeals the grant of summary judgment against him on the statute of limitations issue.

## ISSUES

1. Whether the bankruptcy court properly granted summary judgment against the GE defendants on the California fraudulent transfer claims.

2. Whether the bankruptcy court properly determined that the federal claims were barred by the statute of limitations.

## STANDARD OF REVIEW

A grant of a motion for summary judgment is reviewed *de novo*. *Danning v. Miller (In re Bullion Reserve of N. Am.)*, 922 F.2d 544, 546 (9th Cir.1991). Construing the evidence in the light most favorable to the nonmoving party, the Panel must determine whether there are genuine issues of material fact and whether the lower court correctly applied the relevant law. *Id.*

## DISCUSSION

1. *The Statute of Limitations under Section 546 Does Not Begin Running Until The Permanent Trustee is Appointed.*

The trustee contends the federal claims are timely under the two-year statute of limitations. Section 546(a) provides as follows:

An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—

(1) two years after the appointment of a trustee under section 702 ... of this title[.]

11 U.S.C. § 546(a)(1).[4] The bankruptcy court specifically concluded that this statute began to run on November 7, 1991, the date the interim trustee was appointed, as opposed to the date that the permanent trustee was appointed. On this basis, the bankrupt-

cy court held the trustee's claims under section 544 and 548 to be untimely.

"The federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'" *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 607, 107 L.Ed.2d 603 (1990) (alteration in original) (quoting *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984)). If the bankruptcy court properly concluded the section 544 claims were barred by the statute of limitations, we would have to begin by examining the standing of the trustee to assert the state law cause of action, even though the trial court did not examine the question and the parties do not raise the issue here. *See FW/PBS*, 493 U.S. at 230–31, 110 S.Ct. at 607.

■ The trustee is authorized to prosecute state law fraudulent transfer actions under section 544(b). As noted, however, section 544 is subject to section 546(a)(1)'s two-year statute of limitations. While the trustee clearly has standing to bring the state action under section 544, he does not necessarily have standing to do so outside of section 544. As the bankruptcy court stated in *Mahoney, Trocki & Assoc., Inc. v. Kunzman (In re Mahoney, Trocki & Assoc., Inc.)*, 111 B.R. 914 (Bankr.S.D.Cal.1990):

The fraudulent transfer action under § 544(b) is not an action to assert an independent state law created right on behalf of a trustee which was and is cognizable without the filing of a bankruptcy petition. This right, on behalf of a trustee or debtor-in-possession to recover the fraudulent transfer, is clearly the creation of the bankruptcy code.

111 B.R. at 918.

The United States Supreme Court and the Ninth Circuit Court of Appeals have both held that bankruptcy trustees do not have standing to prosecute actions against third parties on behalf of creditors. *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S.

---

4. Section 546 has subsequently been amended. Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 216, 108 Stat. 4106, 4126 (1994). Because this case was filed before October 22, 1994, the effective date of the act, these amendments have no application here. *Id.*, § 702(b)(1), 108 Stat. at 4150.

416, 428–34, 92 S.Ct. 1678, 1685, 32 L.Ed.2d 195 (1972) (no standing to sue on behalf of debenture holders); *Williams v. Cal. 1st Bank,* 859 F.2d 664, 666–67 (9th Cir.1988). "A debtor's bankruptcy trustee ... is not authorized to pursue every action that creditors of the debtor might pursue.... A trustee's only authority to assert creditor's state-law causes of action related to fraudulent conveyances is found in section 544(b) of the Bankruptcy Code." *Wyle v. Howard, Weil, Labouisse, Friedrichs Inc. (In re Hamilton Taft & Co.),* 176 B.R. 895, 902 (Bankr. N.D.Cal.1995) (footnote omitted). *See Mixon v. Anderson (In re Ozark Restaurant Equipment Co., Inc.),* 816 F.2d 1222, 1224–26 (8th Cir.) (trustee does not have standing to bring alter ego action against debtor corporation's principals on behalf of creditors), *cert. denied sub nom. Jacoway v. Anderson,* 484 U.S. 848, 108 S.Ct. 147, 98 L.Ed.2d 102 (1987). The *Ozark Restaurant* court noted that section 544 as originally proposed would have permitted the trustee to assert causes of action on behalf of creditors, but that Congress deleted that provision before the statute was adopted. 816 F.2d at 1227–28 & nn. 9–10.

▇▇▇ On its face, the California Uniform Fraudulent Transfer Act only confers standing upon a "creditor" of the debtor. *See* Cal.Civ.Code § 3439.07(a) (West supp.1995) (discussing remedies for a "creditor"). *Cf. American Nat'l Bank v. MortgageAmerica Corp. (In re MortgageAmerica Corp.),* 714 F.2d 1266, 1272 & 1275–76 (5th Cir.1983) (action under Texas Fraudulent Transfers Act is apparently assertable only by creditors, but the court concluded the action was in fact property of the estate under section 541; the court relied in part on the existence of section 544(b)). If the trustee cannot proceed under section 544 due to the statute of limitations, the trustee must establish standing in some other way before the suit may be prosecuted; *e.g.,* by demonstrating that the

cause of action accrued to the debtor, and therefore was property of the estate under 11 U.S.C. § 541.

▇▇▇ We need not resolve the question of whether the trustee has standing to bring an action under the California Uniform Fraudulent Transfer Act independent of section 544, because we conclude the section 544 action was not barred by the statute of limitations. Although neither of the parties cited the case, this issue is controlled by prior precedent. *Kroh v. T.R.M. Mfg. (In re Conco Bldg. Supplies, Inc.),* 102 B.R. 190 (9th Cir. BAP 1989). "It is evident from reading § 546(a)(1) and § 702 that the two year time limitation imposed by § 546(a)(1) does not begin to run until the election or qualification of a permanent trustee at the § 341 meeting of creditors." *Conco,* 102 B.R. at 191–92. This has been the conclusion of the "overwhelming majority" of courts to consider the issue. *Grella v. Zimmerman (In re Art & Co., Inc.),* 179 B.R. 757, 761 (Bankr.D.Mass. 1995) (citing cases). *See, e.g., Biggs v. Biljo, Inc. (In re Goetz),* 175 B.R. 743, 745–46 (Bankr.C.D.Cal.1994); *Spence v. Panco (In re Surf & Sand Constr., Inc.),* 138 B.R. 454, 457 (Bankr.D.Del.1992).

There are numerous justifications for this result. The first is the plain language of the statute. As noted, section 546(a)(1) states the triggering date is the "appointment of a trustee under section 702." 11 U.S.C. § 546(a)(1). Interim trustees are not appointed under section 702; they are appointed under section 701.[5] Section 702 provides that a permanent trustee may be elected by the creditors at the section 341 first meeting of creditors. 11 U.S.C. § 702(b). If the creditors do not elect a trustee, the interim trustee becomes the permanent trustee. 11 U.S.C. § 702(d). *See also* 11 U.S.C. § 701(b) (service of interim trustee ends when a trustee is elected or designated under section 702,

---

**5.** The use of the term "appointment" arguably creates an ambiguity, since section 702 does not provide for the "appointment" of a permanent trustee. Judge Kathleen Lax, in the *Goetz* case, noted this fact, but concluded that "[a]ny ambiguity raised by the absence of the term 'appointment' in section 702 is resolved by reference to the procedure as a whole." 175 B.R. at 746.

Section 546(a)(1) reads "the appointment of a trustee under section 702, 1104, 1163, 1302, or 1202 of this title." Every section listed, other than section 702, refers to the 'appointment' of a trustee. Congress thus used "appointment" as a generic term to indicate the event under the relevant sections that triggers the two-year statute of limitations.

and qualifies under section 322). There is no section 702 trustee until the section 341 meeting is held; therefore, section 546(a)(1) begins running only on the date of the section 341 meeting.

Second is the difference in duties of an interim trustee. "Generally, interim trustees assume the limited role of performing administrative functions and preserving the assets of the estate. *See* 4 Lawrence P. King, *Collier on Bankruptcy,* ¶ 701.01 (15th ed.1994). Thus, they are not as likely as § 702 trustees to commence avoidance actions." *Maurice Sporting Goods, Inc. v. Maxway Corp. (In re Maxway Corp.),* 27 F.3d 980, 984 (4th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 580, 130 L.Ed.2d 495 (1994).

The third reason for holding that the statute of limitations does not begin running until the section 341 meeting of creditors is held (and the permanent trustee is appointed under section 702) is that the meeting gives the trustee the opportunity to examine the debtor. As the panel held in *Conco,*

Additional support for the above determination can be found in § 343 which requires the debtor to appear at the § 341 meeting of creditors. The legislative history to § 343 recognizes that "[t]he *purpose* of the examination is to enable creditors *and the trustee to determine if assets have improperly been disposed or concealed....*" H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 332 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 43 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5829, 6288. Based on this recognized purpose, the § 546(a)(1) time limitation should not begin to run until the trustee has had the opportunity to examine the debtor to assist in determining whether preferential transfers have occurred.

102 B.R. at 192 (alterations and emphasis in original) (footnote omitted).

One court in this circuit has concluded *Conco* has effectively been overruled. *Clark Oil and Trading Co. v. Haberbush (In re Sahuaro Petroleum & Asphalt Co.),* 170 B.R. 689, 693 & n. 3 (C.D.Cal.1994). The reasoning of *Sahuaro* is not persuasive, for reasons discussed in a footnote.[6]

We reaffirm *Conco* and reverse the bankruptcy court on the issue of whether the federal claims were time-barred under section 546(a)(1). The two-year statute of limitations did not begin to run until October 12, 1994 at the earliest, or later if the section 341 meeting was further postponed and the permanent trustee was appointed at that time. Therefore, the March 9, 1994 amended complaint was filed well before the expiration of the limitations period. Because the GE defendants' arguments regarding "ancillary" jurisdiction are based on the assumption that the federal claims are time-barred, we do not address these arguments.

### 2. Abstention Was Not Appropriate.

■ The GE defendants also contend the bankruptcy court should have abstained from hearing the action. The specific abstention provision pleaded is 28 U.S.C. § 1334(c)(2), which provides in its relevant part:

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is

---

**6.** *Sahuaro* concluded the date the interim trustee is appointed is the triggering event, not the date the permanent trustee is appointed, based on *Ford v. Union Bank (In re San Joaquin Roast Beef),* 7 F.3d 1413 (9th Cir.1993), and *Upgrade Corp. v. Gov't Technology Services, Inc. (In re Softwaire Centre Int'l, Inc.),* 994 F.2d 682 (9th Cir.1993).

Neither *San Joaquin* nor *Softwaire Centre* indicates *Conco's* reasoning is overruled. Indeed, *San Joaquin* affirms that courts should follow the

plain language of section 546. *See* 7 F.3d at 1416.

*Sahuaro* also relied in part upon the fact that section 546(a)(1) speaks of "appointment" of a trustee, to conclude that Congress intended to include the appointment of an interim trustee under section 701. 170 B.R. at 693. This is a questionable method of statutory interpretation. It is unlikely Congress intended the generic term "appointment" to control over the specifically-named statutes.

commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). The GE defendants also assert abstention was appropriate under 28 U.S.C. § 1334(c)(1) (although they nowhere cite to the statute and merely refer to "comity abstention"). Section 1334(c)(1) provides:

Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).

The GE defendants did not raise either contention regarding abstention before the bankruptcy court. We therefore treat the argument as waived. *See, e.g., Briggs v. Kent (In re Professional Investment Properties of America)*, 955 F.2d 623, 625 (9th Cir.) (general rule is that arguments not raised below will not be considered for the first time on appeal), *cert. denied sub nom. Miller v. Briggs*, — U.S. ——, 113 S.Ct. 63, 121 L.Ed.2d 31 (1992); *McCoy v. Bank of America (In re McCoy)*, 111 B.R. 276, 281–82 (9th Cir. BAP 1990) (panel would not consider abstention issue raised for the first time on appeal).

*3. The Transfer Was Fraudulent Under the California Uniform Fraudulent Transfer Act.*

█ The conclusion that the bankruptcy court erred in holding the federal claims were time-barred does not require that we reverse the bankruptcy court's judgment. Section 544(b) permits the trustee to recover under state fraudulent transfer law. Thus, the bankruptcy court's judgment for the trustee on the California Uniform Fraudulent Transfer Act amounts to a judgment in favor of the trustee under the section 544(b) claim. The GE defendants assert that the conclusion the transfer was fraudulent under state law is in error. We affirm the judgment.

The GE defendants contend they gave reasonably equivalent value to the debtor for the payments, in that Dallas obtained a home suitable for entertaining business associates, and Dallas and Lenci had autos making it possible for Dallas and Lenci "to do their work, to meet customers, attend meetings and present the image appropriate to" the debtor. This is a contention that the transfer was not fraudulent. *See* Cal.Civ.Code § 3439.05 (West supp.1995) ("A transfer made or obligation incurred by a debtor is fraudulent ... if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation[.]"). The GE defendants did not offer any evidence to support this allegation.

This contention is rejected. "Value" is defined as follows:

Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person.

Cal.Civ.Code § 3439.03 (West supp.1995). The legislative history to this statute notes that "[c]onsideration having no utility from a creditor's viewpoint does not satisfy the statutory definition." Cal.Civ.Code § 3439.03, legislative committee comment—assembly, 1986 addition, ¶ (2) (West supp.1995). *See Hayes v. Palm Seedlings Partners–A (In re Agricultural Research and Technology Group, Inc.)*, 916 F.2d 528, 540 (9th Cir.1990) (interpreting Hawaii Uniform Fraudulent Transfer Act). The question is not, as the GE defendants frame it, whether the GE defendants *gave* reasonably equivalent value; it is whether the debtor *received* reasonably equivalent value. Cal.Civ.Code § 3439.05 (West supp.1995) ("A transfer made ... by a debtor is fraudulent ... if the debtor made the transfer ... without receiving a reasonably equivalent value in exchange[.]"). The debtor did not receive property, nor did the transfers satisfy a present or antecedent

debt of the debtor. Therefore, the debtor did not receive "value." [7]

The GE defendants also assert they did not receive a "transfer" of property from the debtor. As framed, this argument is meritless. "Transfer" is defined as

> every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance.

Cal.Civ.Code § 3439.01(i) (West supp.1995). The GE defendants received payments from the debtor, drawn upon the debtor's bank accounts. The GE defendants therefore received a "transfer."

Although framed improperly, the GE defendants in fact appear to be asserting a defense under section 550. Section 550 provides in part:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, . . . the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
> (2) any immediate or mediate transferee of such initial transferee.
> (b) The trustee may not recover under section (a)(2) of this section from—
> (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided.

11 U.S.C. § 550(a), (b)(1). Thus, both initial transferees and mediate or immediate transferees are liable to return a fraudulent transfer. However, subsequent transferees are provided a defense not available to an initial

transferee; the subsequent transferee is insulated to the extent it took for value, in good faith, and without knowledge of the transfer's voidability. 11 U.S.C. § 550(b)(1). Initial transferees are subject to strict liability. *Danning v. Miller (In re Bullion Reserve of N. Am.)*, 922 F.2d 544, 547 (9th Cir.1991).

The GE defendants appear to contend that they were not the initial transferees of the payments, but were subsequent transferees who took in good faith and for value. The GE defendants assert that Dallas and Lenci became the initial transferees when they forced the debtor to make the transfers.

The definitive case in this circuit regarding when a party becomes a "transferee" is *Bullion Reserve*, 922 F.2d at 544 *et seq.* The court adopted the so-called "dominion" or "control" test, as set forth by the Seventh Circuit in *Bonded Fin. Servs. v. European Am. Bank*, 838 F.2d 890 (1988).

> "Although the Bankruptcy Code does not define 'transferee', and there is no legislative history on the point, we think the minimum requirement of status as a 'transferee' is dominion over the money or other asset, the right to put the money to one's own purposes. When A gives a check to B as agent for C, then C is the 'initial transferee'; the agent may be disregarded."

*Bullion Reserve*, 922 F.2d at 548 (emphasis deleted) (quoting *Bonded*, 838 F.2d at 893). "To paraphrase Judge Easterbrook, an entity does not have 'dominion over the money' until it is, in essence, 'free to invest the whole [amount] in lottery tickets or uranium stocks.'" *Bullion Reserve*, 922 F.2d at 549 (alteration in original) (quoting *Bonded*, 838 F.2d at 894). The Ninth Circuit also suggested that courts should "'step back and evaluate a transaction in its entirety to make sure that their conclusions are logical and equitable.'" *Bullion Reserve*, 922 F.2d at

---

7. The GE defendants contend the transfers to Dallas and Lenci should "really be looked upon as part of the compensation paid William Dallas and Mansveto Lenci for their services to the corporation." GE Defendants' Brief, at 20. The trustee has presented evidence that he could discover nothing to indicate that the debtor owed any such compensation to Dallas and Lenci. The debts involved were Dallas and Lenci's personal obligations. The debtor had no direct obligation to the GE defendants. The GE defendants have failed to present any evidence to create a genuine issue of material fact on that point. The payments thus did not satisfy an antecedent debt owing to Dallas or Lenci.

549 (quoting *Nordberg v. Societe Generale (In re Chase & Sanborn Corp.)*, 848 F.2d 1196, 1199 (11th Cir.1988)).

In *McCarty v. Richard James Enterprises, Inc. (In re Presidential Corp.)*, 180 B.R. 233 (9th Cir. BAP 1995), the panel reviewed the case law on this issue. In that case, the principal of the debtor caused the debtor to transfer funds into an escrow account to purchase a house for the principal. The panel held that the principal was the initial transferee, because the escrow agent received the funds as an agent for the principal. The panel found it unnecessary to reach the issue of whether the principal became the initial transferee by causing the debtor to make the transfer.

> We do not reach the issue of whether Manoukian became the initial transferee by "making" the debtor transfer the funds into escrow, thus establishing dominion or control over the funds. The case of *Richardson v. FDIC (In re M. Blackburn Mitchell Inc.)*, 164 B.R. 117 (Bankr. N.D.Cal.1994), raises questions regarding whether a party should be held to be the initial transferee under those circumstances. It is unnecessary for us to resolve this issue here, and we decline to do so.

180 B.R. at 239 n. 5.

■ We conclude that the principal of a corporate debtor does not become a "transferee" by the mere act of causing the debtor make a fraudulent transfer. *Richardson v. FDIC (In re M. Blackburn Mitchell Inc.)*, 164 B.R. 117 (Bankr.N.D.Cal.1994), appropriately rejected the contention that such a party should be held to be the initial transferee. The use of the word "transferee" necessarily implies that the party receives the property.

> In order to be an initial transferee, one must be a transferee in the ordinary sense of the word. A transfer that may be avoided under applicable sections of the Bankruptcy Code takes place from the debtor to some entity. Thus, receipt of the transferred property is a necessary element for that entity to be a transferee under § 550. Simply directing a transfer,

*i.e.*, such as by directing a debtor to transfer its funds, is not enough.

\* \* \* \* \* \*

This Court does not disagree that in order to be a transferee one must obtain dominion and control over funds. But that does not mean that merely because one has dominion and control of funds (as principals of companies ordinarily do) that one is also a transferee. Rather, in order for there to be a *transfer* of the debtor's funds, the debtor must dispose of or part with them, that is, such funds must actually leave the debtor. In order to be a *transferee* of the debtor's funds, one must (1) actually receive the funds, *and* (2) have full dominion and control over them for one's own account, as opposed to receiving them in trust or as agent for someone else.

164 B.R. at 126 (emphasis in original). *See* 11 U.S.C. § 101(54) (" 'transfer' means every mode … of disposing of or parting with property or with an interest in property[.]"). This result is consistent with the fact that corporations must always act through individuals. *Blackburn*, 164 B.R. at 127–28.

Moreover, if the distinction between an initial and a subsequent transferee turns on whether the party benefitting from the transfer "forced" the debtor to make the transfer, then the scope of liability under section 550 is unduly narrowed. Section 550(a)(1) subjects to strict liability not only the initial transferee, but also "the entity for whose benefit such transfer was made." 11 U.S.C. § 550(a)(1). The party who forces a debtor to make a transfer is almost always "the entity for whose benefit such transfer was made," and thus is generally always subject to strict liability. Yet Congress intended to make initial transferees also strictly liable for the transfer (subject to the restriction that the trustee is entitled to only one recovery under section 550(c), presently codified at 11 U.S.C. § 550(d)). "The implication is that the entity for whose benefit the transfer was made is different from a transferee, immediate or otherwise." *Bullion Reserve*, 922 F.2d at 548. Consideration of whether the beneficiary of the transfer "forced" the debtor to make the transfer would collapse the two prongs of strict liability into a single party.

It would permit entities who are "initial transferees" in the plain sense of the term to escape liability, and deprive the bankruptcy estate (and thus the debtor's creditors) of an additional source for recovery. There is nothing in the statute or otherwise to justify this result.

The GE defendants also make reference to their defenses under state law. They assert that they fall within the defenses of Cal.Civ. Code § 3439.08. That section provides in its relevant part:

> (a) A transfer or an obligation is not voidable under subdivision (a) of Section 3439.04, against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee.
>
> (b) Except as otherwise provided in this section, to the extent a transfer is voidable in an action by a creditor under paragraph (1) of subdivision (a) of Section 3439.07, the creditor may recover judgment for the value of the asset transferred, as adjusted under subdivision (c), or the amount necessary to satisfy the creditor's claim, whichever is less. The judgment may be entered against the following:
>
> > (1) The first transferee of the asset or the person for whose benefit the transfer was made.
> >
> > (2) Any subsequent transferee other than a good faith transferee who took for value or from any subsequent transferee.
>
> > &#42;    &#42;    &#42;    &#42;    &#42;    &#42;
>
> (e) A transfer is not voidable under subdivision
>
> > (b) of Section 3439.04 or Section 3439.05 if the transfer results from the following:
> >
> > (1) Termination of a lease upon default by the debtor when the termination is pursuant to the lease and applicable law.
> >
> > (2) Enforcement of a lien in a noncollusive manner and in compliance with applicable law, including Division 9 (commencing with Section 9101) of the Commercial Code, other than a retention of collateral under subdivision (2)

of Section 9505 of the Commercial Code and other than a voluntary transfer of the collateral by the debtor to the lienor in satisfaction of all or part of the secured obligation.

Cal.Civ.Code § 3439.08(a), (b), (e) (West supp.1995). The bankruptcy court granted summary judgment against the GE defendants under Cal.Civ.Code § 3439.05, not Cal. Civ.Code § 3439.04. Therefore, Cal.Civ. Code § 3439.08(a) does not apply here.

■ Cal.Civ.Code § 3439.08(b) presents essentially the same defense suggested in connection with section 550: whether a principal becomes a transferee by causing the debtor to make the transfer. The reasoning proposed in connection with section 550 is equally applicable here. As the legislative history to Cal.Civ.Code § 3439.08 notes, "[s]ubdivision (b) is derived from Section 550(a) of the Bankruptcy Code." Cal.Civ. Code § 3439.08, legislative committee comment—assembly, 1986 addition, ¶ (2) (West supp.1995). "Although the Uniform [Fraudulent Transfer] Act and the common law thus provide the substantive law in this case, cases construing the Bankruptcy Code counterparts are persuasive authority due to the similarity of the laws in this area." *Agricultural Research*, 916 F.2d at 534 (action under Hawaii Uniform Fraudulent Transfer Act).

■ The GE defendants argue they fall within the exception of Cal.Civ.Code § 3439.08(e). This subsection provides a defense "if the transfer results from" the termination of a lease, or the enforcement of a lien in a noncollusive manner. Cal.Civ.Code § 3439.08(e)(1), (2) (West supp.1995). It is apparent from the uncontested facts the transfers to the GE defendants did not result from the *termination* of a lease, nor from the *enforcement* of a lien. The transfers were simple payments on the obligation, and the GE defendants did not obtain the payments by terminating the auto leases or enforcing the lien against Dallas' residence.

## CONCLUSION

We REVERSE the bankruptcy court on the statute of limitations issue, finding that the federal claims were not barred by section

546. We AFFIRM the bankruptcy court's conclusion that the transfer to the GE defendants was fraudulent under the California Uniform Fraudulent Transfer Act, and AFFIRM the bankruptcy court's judgment. We REMAND to the bankruptcy court so that the judgment may be properly designated as arising under section 544(b).