FILED

NOT FOR PUBLICATION

AUG 06 2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | BAP No. CC-13-1483-TaDKi |
| | ) | |
| IMAGINE FULFILLMENT SERVICES, LLC, | ) | Bk. No. 12-20544-WB |
| | ) | |
| | ) | Adv. Pro. No. 12-1514-WB |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| DC MEDIA CAPITAL, LLC, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | MEMORANDUM[*] |
| | ) | |
| IMAGINE FULFILLMENT SERVICES, LLC; UNITED STATES TRUSTEE, | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

Argued and Submitted on June 26, 2014
at Pasadena, California

Filed - August 6, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Mark D. Houle,[**] Bankruptcy Judge, Presiding

_____

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[**]Judge Houle entered the judgment in the adversary proceeding from which appellant appeals. Judge Julia W. Brand, however, entered the Amended Memorandum Decision (for publication) and order on partial summary judgment that determined, prior to entry of the Judgment, the specific narrow issue as to which appellant D.C. Media Capital, LLC seeks review. See Imagine Fulfillment Servs., LLC v. DC Media Capital, LLC (In re Imagine Fulfillment Servs., LLC), 489 B.R. 136 (Bankr. C.D. Cal. 2013).

Appearances:    Jeffrey J. Williams of the Law Offices of Jon A. Kodani argued for Appellant DC Media Capital, LLC; Aram Ordubegian of Arent Fox LLP argued for Appellee Imagine Fulfillment Services, LLC.

_____

Before: TAYLOR, DUNN, and KIRSCHER, Bankruptcy Judges.

## INTRODUCTION

Judgment creditor D.C. Media Capital, LLC ("DC Media") appeals from the bankruptcy court's judgment in favor of chapter 11[1] debtor Imagine Fulfillment Services, LLC (the "Judgment"). Pursuant to §§ 547 and 550, the Judgment avoids and allows the Debtor to recover as a preferential transfer a prepetition judgment lien filed by DC Media. DC Media argues that the bankruptcy court erred when it determined on summary judgment that DC Media's prepetition state court judgment against Debtor was not a contingent debt for purposes of its insolvency analysis. We determine that the bankruptcy court did not commit error and, thus, we AFFIRM.

## PROCEDURAL AND FACTUAL BACKGROUND[2]

Debtor filed its voluntary chapter 11 petition in March 2012. Eighty-nine days before the filing, DC Media filed a Notice of Judgment Lien with the California Secretary of State

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] Most of the relevant undisputed facts are set forth in the bankruptcy court's published decision. Appellant seeks review of the bankruptcy court's ruling regarding only one transfer identified in the Amended Memorandum Decision as "Transfer One." We limit our summary of facts accordingly.

- 2 -

("Judgment Lien") with respect to a state court judgment in the total amount of $3,997,223 against the Debtor. Debtor appealed from the state court judgment after the lien was recorded but before the petition date.

In the bankruptcy case, Debtor filed an adversary proceeding against DC Media seeking to avoid three alleged preferential transfers, the first of which was the filing of the Judgment Lien,[3] and to recover and preserve the avoided transfers for the benefit of the estate. Debtor then sought partial summary judgment or adjudication of facts as to all three transfers (the "Debtor's First MSJ"). DC Media filed a cross motion seeking partial summary judgment as to two alleged affirmative defenses ("DC Media's MSJ"). DC Media also opposed Debtor's First MSJ.

In DC Media's opposition to Debtor's First MSJ, it asserted three grounds to support denial: (1) that no transfer was made within the relevant 90-day prepetition window; (2) that its evidence successfully rebutted the presumption of insolvency; and (3) that Debtor failed to show that DC Media would receive more from the transfers than it would receive in a hypothetical chapter 7 liquidation had the transfers not been made. In support of its third argument, DC Media argued that it held a perfected security interest in Debtor's personal property, not only as a result of the Judgment Lien, but also based on DC Media's prepetition service on the Debtor of an order to

---

[3] Debtor identified "Transfer 2" as DC Media's filing of an abstract of the state court judgment with the Los Angeles County Recorder. "Transfer 3" was the seizure of $81,196 via levy by the sheriff from Debtor's prepetition bank account – DC Media's partial collection on account of the state court judgment.

appear for judgment debtor exam ("ORAP lien"). DC Media argued that Debtor never sought to avoid the ORAP lien and asserted that even if all other transfers alleged by Debtor were avoided, DC Media would still remain a secured creditor.

Prior to the hearing on the Debtor's First MSJ, Debtor sought leave to amend the complaint to avoid the ORAP lien. DC Media filed limited opposition. The hearing on the Debtor's request to amend was to be heard the day after the hearing on Debtor's First MSJ.

The bankruptcy court heard oral argument on Debtor's First MSJ in November 2012, and took both Debtor's First MSJ and DC Media's MSJ under submission. It then discussed scheduling with the parties, including timing of Debtor's amended complaint and the future hearing on Debtor's proposed disclosure statement. The parties agreed that Debtor could amend the complaint, but questioned its potential impact if filed before the bankruptcy court's decision on the two under-submission motions. To avoid confusion, the Court vacated the hearing on the Debtor's motion for leave to amend and agreed to determine later the appropriate time for Debtor to file the first amended complaint.

The bankruptcy court entered its Amended Memorandum Decision on March 12, 2013, and its order on March 14, 2013, granting, in part, and denying, in part, Debtor's First MSJ (the "First MSJ Order"). As to the Judgment Lien, the bankruptcy court found there to be no dispute that it was a transfer of an interest of the Debtor in property to or for the benefit of Debtor's creditor, DC Media, on account of the antecedent debt established by the state court judgment. Therefore, the bankruptcy court

- 4 -

addressed only three disputed issues: (1) whether the transfer was made within the 90-day preference period; (2) whether Debtor was insolvent at the time of the transfer; and (3) whether the Judgment Lien, if not avoided, would allow DC Media to receive more than it would in a hypothetical liquidation.

The bankruptcy court granted summary adjudication as to all but one of the elements necessary to avoid the Judgment Lien. Based on the ORAP lien, it denied summary adjudication solely as to whether the Judgment Lien allowed DC Media to receive more than it would in a hypothetical chapter 7 liquidation had the transfer not occurred. Regarding the insolvency element, the bankruptcy court reasoned that the question turned on whether the state court judgment was a contingent liability. If it were not contingent, the full amount must be included in the insolvency analysis – which would conclusively eliminate any genuine issue of material fact on summary judgment based on the balance sheet analysis. The bankruptcy court held, as a matter of law in the Ninth Circuit, that the state court judgment was not a contingent debt and thus, that DC Media failed to show the existence of disputed facts regarding Debtor's insolvency.

The bankruptcy court granted summary judgment as to one of the remaining two transfers, and denied summary judgment as to the other. It denied DC Media's MSJ in its entirety.

DC Media filed a notice of appeal from the First MSJ Order and a motion for leave to appeal, recognizing it as an interlocutory order. The Bankruptcy Appellate Panel entered an order denying leave and dismissing the first appeal on May 21, 2013. Thereafter, the bankruptcy court entered its order

granting Debtor's motion for leave to file its amended complaint and Debtor filed its second motion for partial summary judgment or, in the alternative, for summary adjudication of facts ("Debtor's Second MSJ").

Debtor's Second MSJ sought resolution in its favor on the remaining preferential transfer element. DC Media did not oppose the Debtor's Second MSJ.

The bankruptcy court thereafter entered its order granting Debtor's Second MSJ and the separate Judgment thereon. The Judgment provides that: "With respect to [the Judgment Lien] summary judgment is granted as to [Debtor's] First, Second, and Third Claims for Relief."[4] Judgment, ECF Dkt. 111 at 2:4-5. It further provides that the Judgment Lien is avoided and preserved for the benefit of the estate; and DC Media's secured claim is disallowed.

DC Media timely appealed.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(F).

We have jurisdiction under 28 U.S.C. § 158(a) and (b) to hear appeals from final judgments, orders, and decrees; and with leave of the Panel, from interlocutory orders and decrees of bankruptcy judges. The burden of demonstrating jurisdiction lies

---

[4] The First Claim for Relief sought avoidance and recovery of preferential transfers pursuant to §§ 547 and 550; the Second Claim sought to preserve the avoided transfers pursuant to § 551; and the Third Claim sought disallowance of DC Media's filed secured proof of claim, or reclassification as a general unsecured claim. The amended complaint also contained a Fourth Claim – for recovery of attorney's fees and costs of suit.

with the party asserting it. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 379-80 (1994). Here, DC Media states in its opening brief[5] that the Judgment is final for purposes of appellate jurisdiction. It reiterates arguments it made in response to the query from the Clerk of the BAP regarding finality, to the effect that the Fourth Claim contained in the amended complaint but not addressed in the Judgment (which sought attorney's fees), need not be resolved for purposes of a finality determination pursuant to Budinich v. Becton Dickinson & Co., 486 U.S. 196 (1988). Although we agree that the lack of an attorney's fees determination does not render the Judgment not final for purposes of appeal, we also briefly reviewed the impact on finality of the lack of a separate judgment as to the two other transfers that were resolved by the First MSJ Order.

A motions panel in DC Media's first appeal (BAP 11-1141) denied leave to appeal the First MSJ Order. When the bankruptcy court entered the Judgment, resolving all remaining issues in the adversary proceeding (but for the attorney's fees), the First MSJ Order became final and appealable. See Munoz v. Small Bus. Admin., 644 F.2d 1361, 1364 (9th Cir. 1981) ("an appeal from the final judgment draws in question all earlier non-final orders and

---

[5] In light of the fact that the Judgment was entered in connection with a motion for "partial" summary judgment, and the inclusion of a fourth claim in the amended complaint, which was not addressed in the Judgment, the Clerk of the BAP issued an order requiring the parties to file and serve written responses explaining how the judgment on appeal is final. After review of DC Media's response, a motions panel found the order on appeal sufficiently final for purposes of appeal. Nonetheless, we have an independent duty to examine jurisdictional issues. Gen. Elec. Capital Auto Lease, Inc. v. Broach (In re Lucas Dallas, Inc.), 185 B.R. 801, 804 (9th Cir. BAP 1995).

all rulings which produced the judgment"). This result is of particular import here because DC Media's sole issue on appeal was determined by the bankruptcy court when it ruled on the Debtor's First MSJ.[6]

Based on the foregoing review, we determine that we have jurisdiction under 28 U.S.C. § 158.[7]

## ISSUE

Whether the bankruptcy court erred in determining, as a matter of law, that the state court judgment was not a contingent debt.

## STANDARD OF REVIEW

We review summary judgment de novo. Bamonte v. City of Mesa, 598 F.3d 1217, 1220 (9th Cir. 2010). The question of whether a debt is contingent is a question of law subject to de novo review. Nicholes v. Johnny Appleseed (In re Nicholes), 184 B.R. 82, 86 (9th Cir. BAP 1995).

---

[6] Ordinarily there should be a separate document embodying a final judgment that is distinct from and in addition to an order granting a motion for summary judgment. See Rule 9021. Here, we located no separate judgment entered on the docket as to the two transfers that were resolved by the First MSJ Order. The parties effectively waived that requirement by treating the First MSJ Order as a final judgment coupled with the Judgment. See Casey v. Albertson's Inc., 362 F.3d 1254, 1256-59 (9th Cir. 2004). And in addition, pursuant to Civil Rule 58(c)(2)(B) (made applicable here pursuant to Rule 7058), judgment on the other two transfers was deemed entered, at the latest, 150 days from entry of the First MSJ Order, which was March 14, 2013.

[7] DC Media also mentions in a footnote in its opening brief that although the Debtor's chapter 11 plan was confirmed, this appeal was not mooted thereby because the plan expressly "contemplates this appeal, and provides a remedy for the appellant in the event this appeal is successful." Appellant's Opening Br. at 3 n.1. We agree.

- 8 -

**DISCUSSION**

Civil Rule 56(c) (incorporated into the Bankruptcy Rules under Rule 7056) provides that a party may move for summary judgment when there is no genuine issue as to a material fact and the moving party is entitled to a judgment as a matter of law. A "genuine issue" is one where, based on the evidence presented, a fair-minded jury could return a verdict in favor of the nonmoving party on the issue in question. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). All justifiable inferences must be drawn in favor of the non-moving party. Id. at 255. Likewise, all evidence must be viewed in the light most favorable to the non-moving party. Lake Nacimiento Ranch v. San Luis Obispo Cnty., 841 F.2d 872, 875 (9th Cir. 1987). Therefore, viewing the evidence in the light most favorable to the non-moving party, we must determine whether there are any genuine disputes of material fact that remain for trial and whether the prevailing party is entitled to judgment as a matter of law. New Falls Corp. v. Boyajian (In re Boyajian), 367 B.R. 138, 141 (9th Cir. BAP 2007).

Pursuant to § 547(b)(3), for the Debtor to avoid the Judgment Lien as a preference, Debtor was required to establish that it was insolvent when the Judgment Lien was filed. Debtor is presumed to be insolvent 90 days before it filed its petition, pursuant to § 547(f), and it is undisputed that the Judgment Lien was filed 89 days before the petition date. DC Media can overcome the insolvency presumption only with substantial evidence of the Debtor's solvency on the date the Judgment Lien was filed. The bankruptcy court held that DC Media failed to do

so.[8]  As relevant here, it found, as a matter of law, that the state court judgment is a noncontingent liability.[9]  We agree.

The Bankruptcy Code does not define the term "contingent."  See In re Nicholes, 184 B.R. at 88.  It is well settled, however, that "a debt is noncontingent if all events giving rise to liability occurred prior to the filing of the bankruptcy petition."  Id.  A contingent debt is "one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor."  In re Fostvedt, 823 F.2d 305, 306 (9th Cir. 1987) (quotation and citation omitted).  In the context of California state court judgments, it is also well-settled that unstayed judgments, even those on appeal, "are not contingent as to liability or amount."  Marciano v. Chapnick (In re Marciano), 708 F.3d 1123, 1127 (9th Cir. 2013); and see In re Keenan, 201 B.R. 263, 266 (Bankr. S.D. Cal. 1996).

Here, DC Media held a California state court judgment against Debtor.  Debtor filed an appeal shortly before filing bankruptcy, but after the Judgment Lien was filed.[10]  Debtor

---

[8]  The bankruptcy court's analysis of the insolvency issue is set forth in its extensive, well-reasoned discussion in the published Amended Memorandum Decision.  See In re Imagine, 489 B.R. at 144-50.

[9]  Thus, the full amount of the state court judgment, when added to the Debtor's balance sheet, resulted in DC Media's failure to overcome the presumption of insolvency and entitled Debtor to summary judgment on the insolvency element.  In re Imagine, 489 B.R. at 150.

[10]  On the date of the transfer, which DC Media conceded at oral argument is the critical date for avoidance purposes, the state court judgment was not only not stayed on appeal, it was not even on appeal.

- 10 -

never sought or obtained a stay, and DC Media commenced collection efforts on the state court judgment before Debtor filed bankruptcy.[11] DC Media, nonetheless, argues on appeal that the bankruptcy court erred when it held, as a matter of law, that the state court judgment was not a contingent liability. It argues that for preference analysis purposes the insolvency determination is a factual determination that required the bankruptcy court to determine the fair valuation of not only assets but liabilities. And to do so, it argues, the bankruptcy court had to consider DC Media's evidence that Debtor excluded the state court judgment from its balance sheets and DC Media's expert's opinion that such exclusion was appropriate under generally accepted accounting principles ("GAAP"). Based thereon, DC Media argues that the state court judgment was necessarily a contingent claim that must be discounted to little or no value in the insolvency analysis. Only at trial, it argues, could the bankruptcy court find that relevant GAAP principles were not persuasive. We disagree.

"There is no generally accepted accounting principle for analyzing the insolvency of a company." Arrow Elecs., Inc. v. Justus (In re Kaypro), 218 F.3d 1070, 1076 (9th Cir. 2000) (citing Sierra Steel, Inc. v. Totten Tubes, Inc. (In re Sierra Steel, Inc.), 96 B.R. 275, 278 (9th Cir. BAP 1989)). And as DC Media concedes, GAAP are not controlling. See In re Sierra Steel, Inc., 96 B.R. at 278. In particular, "[w]ith regard to

[11] In fact, one of the two other transfers was based on DC Media's levy on one of Debtor's bank accounts as part of DC Media's collection efforts on the unstayed state court judgment.

the sum of [a debtor's] debts, GAAP are . . . inapposite because they do not report liabilities in accordance with the right to payment standard of 11 U.S.C. § 101(5) and (12)." Devan v. The CIT Group/Commercial Servs., Inc. (In re Merry-Go-Round Enters., Inc.), 229 B.R. 337, 343 (Bankr. D. Md. 1999).

A debtor is insolvent when its debts exceed its assets – the "traditional bankruptcy balance sheet test." In re Koubourlis, 869 F.2d 1319, 1321 (9th Cir. 1989). This test is codified at § 101(32)(A), which defines insolvency to mean: "with reference to an entity other than a partnership and a municipality, financial conditions such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation" exclusive of certain exempted or fraudulently transferred property. Under the Code, the term debt "means liability on a claim." 11 U.S.C. § 101(12). And the term "claim" is defined under the Code to include "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; . . . ."

Based on the foregoing statutory provisions, to the extent GAAP financial reporting omits any type of collectible debt from a debtor's balance sheet – whether contingent or noncontingent – the resulting financial statement is not dispositive as to the debtor's solvency or insolvency. Thus, the omission of the state court judgment from such a financial statement does not require a conclusion that the omitted debt is a contingent debt for insolvency analysis purposes. As set forth in depth in the bankruptcy court's published Amended Memorandum Decision,

substantial decisional authority supports the conclusion that the unstayed state court judgment is a noncontingent liability, and thus, its full amount must be included in the insolvency analysis. See In re Imagine, 489 B.R. at 149-50. DC Media cites none to the contrary.

DC Media, however, criticizes the test utilized by the bankruptcy court to determine that the state court judgment was not "contingent" – whether all events giving rise to the liability had occurred. DC Media argues that this test is inappropriate because it was developed in statutory contexts outside an insolvency determination; statutes that specifically refer to contingent or noncontingent claims.[12] And, because the Code definition of "insolvent" refers to "fair valuation," DC Media reasons that "Congress intended the insolvency analysis to be based on a consideration of all relevant and admissible evidence." Appellant's Opening Brief at 14. DC Media argues that the bankruptcy court, thus, was required to value the state court claim[13] at less than its face amount based on Debtor's

_____

[12] In particular, such analysis arises in the context of chapter 13 eligibility (§ 109(e)); eligibility as petitioning creditors in involuntary bankruptcy petitions (§ 303); and the claims estimation process(§ 502(c)).

[13] In part, DC Media bases this argument on its interpretation of § 101(32A) as requiring "fair valuation" of debts as well as property to determine insolvency. At oral argument in this appeal, DC Media's counsel argued that the Ninth Circuit supported this interpretation in Merkel (no citation provided). The question at issue in Merkel, was "the standard for determining when a contingent obligation to pay is a 'liability' for purposes of determining insolvency under 26 U.S.C. § 108(d)(3)." Merkel v. Comm'r of Internal Revenue, 192 F.3d 844, 846 (9th Cir. 1999). In its comparison of insolvency analysis under the Internal Revenue Code section at issue and § 101(32A), the Ninth Circuit stated that in

continue...

opinion that it would prevail on appeal, the contingency identified by DC Media. Again, we disagree.

It is well-settled that the amount of a contingent claim should be "determined in accordance with the probability that the contingency will occur." In re Merry-Go-Round Enters, Inc., 229 B.R. at 342 (citing Covey v. Commercial Nat'l Bank of Peoria, 960 F.2d 657, 659-61 (7th Cir. 1992)). The amount of a noncontingent debt, however, is the amount of the claim itself. Id. DC Media's argument that the state court judgment must be discounted based on the Debtor's opinion of success on appeal in effect presumes that the debt is a contingent debt in the first instance.

DC Media's arguments against the established test for determining a debt to be contingent are not persuasive. We see no reasoned or statutorily supported purpose to deviate, for insolvency determination purposes, from the definition of "contingent debt" as "one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor." In re Fostvedt, 823 F.2d at 306 (quotation omitted). The Debtor's liability for the state court judgment did not rely "on some future extrinsic event to trigger liability." See In re Nicholes, 184 B.R. at 88. In the 90 days before the Debtor filed its bankruptcy petition, the unstayed state court judgment

---

[13]...continue
§ 101(32A), the "phrase 'at a fair valuation' may be read to modify both 'debts' and 'property,' . . . ." 192 F.3d at 851. Nothing in the Merkel decision, however, supports discounting a noncontingent claim.

- 14 -

was subject to collection by DC Media, and DC Media partially collected on the debt, via levy.[14] The question is not whether the Debtor could ever pay the debt. The question is whether Debtor was liable for the debt. As of the filing of the Judgment Lien, Debtor was liable for the full amount of the Judgment, and the bankruptcy court, therefore, did not err when it determined, as a matter of law, that the Judgment was not contingent.

## CONCLUSION

Based on the foregoing, we AFFIRM.

---

[14] As set forth in the Amended Memorandum Decision, by DC Media's calculations, which it based on the discounting theory, the Judgment should be valued at $7,394.70, in part because Debtor had insufficient assets from which to pay it. In re Imagine, 489 B.R. at 146. The logic of this argument is facially unsound, as its application would make a finding of insolvency never possible - a liability could never exceed a debtor's assets. It is also inconsistent with the facts here, considering that DC Media actually collected over $80,000 by prepetition levy and actively defended against the Debtor's appeal in the state appellate court.

- 15 -